**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JANICE F. KENNEDY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  04-C-5713** |
| **v.** | ) | |
| **LEASE FINANCE GROUP, a division of CIT,** | ) | **HONORABLE DAVID H. COAR** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Janice F. Kennedy ("Plaintiff") is suing her former employer, Lease Finance Group, a division of CIT ("Defendant" or "LFG"), for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA").  Before this court comes Defendant's motion for summary judgment in its favor.  For the following reasons, Defendant's motion is GRANTED.

**I.      SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When reviewing a motion for summary

judgment, the court must view the facts in the light most favorable to the nonmoving party and

draw all reasonable inferences in that party's favor. See Schuster v. Lucent Technologies, Inc.,

327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the

non-movant must set forth specific facts demonstrating that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion, the

non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or

admissions; the non-movant cannot rest on the pleadings alone. Celotex, 477 U.S. at 324. "A

scintilla of evidence in support of the non-movant's position is insufficient," Anderson, 477 U.S.

at 252, and the non-movant "must do more than simply show that there is some metaphysical

doubt as to the material fact." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986). Weighing evidence, determining credibility, and drawing reasonable

inferences are jury functions, not those of a judge deciding a motion for summary judgment.

Anderson, 477 U.S. at 255.

## II.    FACTS[1]

Defendant, located in Chicago, Illinois, leases credit card terminals and other related point-of-sale equipment to small and mid-size retailers in the United States and Canada. Defendant is a division of CIT, a commercial and consumer finance company headquartered in Livingston, New Jersey.

Plaintiff is a former Staff Accountant at LFG.  She was hired on or about July 1, 1998 and resigned effective July 27, 2005.  Plaintiff received a Bachelor of Arts in Political Science in 1999 and a Masters of Science in Public Service Management in 2003, both from DePaul University.

On March 24, 2005, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  In that complaint, and in the instant Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of her age (Plaintiff is now 56), race (black), and disability (asthma and hearing loss).  Specifically, Plaintiff alleges that in January 2004 she was denied promotion to the Operations Specialist position at LFG and in March 2004 her co-workers received higher pay raises than she did.

---

[1]  Unless otherwise stated, the following facts are undisputed and are taken from the parties' Local Rule 56.1 materials.  Nearly all of the material facts in Defendant's Statement of Facts are admitted because they have not been controverted by Plaintiff.  This was the consequence of Plaintiff's failure, under Local Rule 56.1(b)(3)(A) and (B), to respond to *each* numbered paragraph in Defendant's statement of facts and to submit a statement of additional facts that require denial of summary judgment.  Instead, Plaintiff merely highlighted seven of Defendant's facts with which she disagreed and stated the grounds for her disagreement.  None of these seven facts, however, as discussed below, establish a genuine issue for trial.

A.      Plaintiff's Disabilities

Plaintiff's claimed disabilities are asthma and total hearing loss in her right ear.  Plaintiff

maintains that her asthma is bought on by stress, anxiety, and the weather.  For her asthma,

Plaintiff takes two medications once a day for maintenance and uses an inhaler as needed.

Plaintiff has stated that this regimen controls her asthma.  Plaintiff's deposition testimony notes

that people at LFG knew about her asthma because they could hear her coughing.  Plaintiff's

disputed facts note that people knew about her asthma because of her short-term disability leaves

of absence from work.  Plaintiff claims that she told the former Human Resources

Representative, Chris Mahon ("Mahon"), about her asthma   She did not, however, request an

accommodation from LFG, and believed there was nothing LFG could do for her asthma.

According to Plaintiff, the medication allowed her to perform her job duties without any

accommodation from LFG.  Plaintiff did not have any medical restrictions on the type of work

she could perform.

Plaintiff never told anyone at LFG about her hearing loss, and no one at LFG was aware

of her hearing loss.  Plaintiff stated that her hearing loss did not affect her ability to do her job.


B.      Defendant's Policies and Procedures

Defendant maintains its Employee Handbook on the CIT Employee Intranet.  The

Employee Handbook contains various policies, including those about "Equal Employment

Opportunity," "Recruitment Process," "Workplace Harassment," and "Employee Concern

Procedure."  The "Equal Employment Opportunity" applies to hiring, promotion, demotion,

transfer, termination, and compensation.  The "Employee Concern Procedure" guides employees

in addressing job-related issues in the workplace, including complaints about harassment and discipline. An employee has three options when filing a complaint: (1) discuss the problem with the first level manager to whom the employee reports; (2) have a conference with the unit or department head, area Vice President or Senior Vice President, Local Human Resources Representative or the Corporate Employee Department in Livingston, New Jersey; or (3) submit the problem to the CIT Integrity Hotline.

Promotions at LFG are based on the requirements of the position and the candidate's credentials, experience, and work performance. If an individual has exhibited strength in an area that is central to the available position, then that candidate will be considered for the position. Strong performers may not be qualified for available positions within LFG for various reasons, including that their experience and strong performance may be in an area completely unrelated to the available position. The requirements of the position dictate the type of candidate LFG will hire or promote.

C.      Pay Raises in the Accounting Department

Plaintiff began employment at LFG in 1998 as an Accounting Clerk in the Accounting Department. After the job functions of LFG's Accounting Clerks expanded in March 2000, Plaintiff's title, along with the title of all Accounting Clerks, charged to Staff Accountant. During the time Plaintiff was employed at LFG, her only experience was in the Accounting Department; she never worked in any other department at LFG.

During Plaintiff's employment, LFG employed three Staff Accountants: Plaintiff, Sebreena Parks ("Parks"), and Willie Richardson ("Richardson"). Parks is an African-American

female, born in 1968, who has no known disabilities. Parks began her employment with CIT as an Accounting Clerk in 1997 and has worked only in the Accounting Department. Richardson is an African-American male, also born in 1968, who has no known disabilities. Richardson began his employment with LFG's Collections and Tax Departments in 1997; he transferred to the Accounting Department in 2001. Plaintiff was not responsible for supervising Parks and Richardson.

Staff Accounts are responsible for booking the daily cash activity for their case accounts in the General Ledger and maintaining a running total of that activity. Staff Accountants are also responsible for reconciling the daily booking of leases between two computer programs, processing accounts payable items received each day, and preparing various daily, weekly, and monthly reports.

The Accounting Department was an independent department at LFG. In November 2002, however, the department was reorganized to become part of a combined Accounting/Compliance Department. Because of the reorganization, Accounting Department personnel gained the additional responsibility of managing funding for the leases booked each day. The manager of the Accounting Department, Anthony Szabo ("Szabo") needed one of the three Staff Accountants to assist in these funding duties. Szabo is a Caucasian man, born in 1967. Szabo requested a volunteer since the additional work had to be performed at the end of the day, most likely after hours, and would take approximately 15 to 20 minutes. Defendant maintains that Richardson was the only Staff Accountant to volunteer and that he already handled additional work preparing tax filings. Plaintiff disputes this; she maintains that the additional tax filing work was rotated weekly between the three Staff Accountants.

Szabo has been responsible for supervising Parks since 1997, Plaintiff since 1998, and Richardson since 2001. As Accounting Manager, Szabo is responsible for preparing the Staff Accountants' performance reviews and recommending their merit salary increases. The performance evaluations are completed in January or February for the preceding year. The performance rating scale is 1 to 4, with 1 ("Outstanding") being the highest possible rating and 4 ("Needs Improvement") being the lowest. A rating of 2 is characterized as "Exceeding Expectations" and 3 as "Meeting Expectations."

Szabo prepared the 2003 performance evaluations and discussed them with each Staff Accountant in February 2004. He gave the Staff Accountants the following ratings: Plaintiff received a 2.17, Parks received a 2.09, and Richardson received a 1.84. According to Szabo, all three Staff Accounts were solid performers in 2003. He rated Parks slightly higher than Plaintiff because of Parks' substantial contribution to tax filing work in the beginning of 2003. He rated Richardson slightly higher than both Parks and Plaintiff because of his outstanding work performance, his extra work with the additional funding and tax filing responsibilities, and his willingness to handle additional duties and tasks as needed.

Szabo's 2004 salary merit increase recommendations for the Staff Accountants were based on their performance ratings in 2003. Szabo also sought to equalize the disparity in Richardson's salary. Richardson's performance in 2003 was better than that of the other two Staff Accountants and he handled greater responsibilities. Yet, prior to the 2004 merit increases, Richardson was paid less than Parks and Plaintiff. Szabo believed there was no justification for this disparity. Thus, in 2004, Plaintiff received a 2% merit increase, which increased her annual salary to $36,000. Richardson received a 4% merit increase, which increased his annual salary

to $36,000.  Parks received a 2.09% merit increase, which increased her annual salary to $36,325.

        D.      Jobs to Which Plaintiff Applied But Was Not Promoted

            1.      Vendor Account Assistant - September 2003

Defendant had an opening for Vendor Account Assistant in September 2003.  The Vendor Account Assistant is responsible for assisting Vendor Representatives and Sales Consultants with all aspects of the vendor relationship at the transaction level.  The ideal candidate would have strong writing and communication skills, a strong interest in sales, and prior sales experience.

Plaintiff learned of the position from a posting on the bulletin board in LFG's kitchen.  She applied for the position by submitting her resume to Mahon and interviewed for the position.  Defendant maintains that Plaintiff was not qualified for the Vendor Account Assistant position because her only experience at LFG was in Accounting, where she did not obtain any customer service experience.  Plaintiff counters that the job posting did not state that only customer service experience with LFG was considered for the job.

Lissette Ortega ("Ortega") was the successful applicant.  Ortega is a Hispanic woman, born in 1970, with no known disability.  Defendant maintains that Ortega received the position because of her prior customer service experience with LFG, because she exhibited the ability to handle a lot of responsibility, because she was willing to take initiative to complete tasks not associated with her position, and because she received excellent performance reviews from her supervisor, who described her as an "ideal employee."

Plaintiff never worked in the same department as Ortega. Plaintiff never supervised Ortega or saw her performance reviews.

2.      Operations Specialist - January 2004

In December 2003, LFG created a new position, Operations Specialist, to support Sarai Sierra, the Operations Manager for LFG. The duties of the Operations Specialist included running production reports, managing the time and attendance for all employees, supervising the employees, receiving requests for time off, monitoring violations of CIT policies, addressing problems in the work product, reconciling data entry errors, and monitoring excessive data errors by employees.

Defendant posted the position opening in December 2003 and January 2004 on the CIT Employee Intranet. In addition, information about the opening was posted in the two lunchrooms at the LFG offices.

Sierra, to whom the Operations Specialist would report, was responsible for interviewing the candidates and selecting the successful candidate. Sierra is a Hispanic female born in 1971. Sierra stated that she was looking for an individual on whom she could depend to address department-related problems, an individual who would be responsive to employees' issues, and one who would be willing to put forth extra effort to get the job done.

Six internal candidates , including Plaintiff, applied for the position. After interviewing each candidate, Sierra selected Glenda Deleon, a Hispanic woman with no known disabilities, born in 1977. Sierra believed Deleon was the most qualified individual for the position. According to Sierra, Deleon possessed the broadest spectrum of work experience and skills

necessary for the position and had always demonstrated commitment to her work and willingness to give extra effort. Sierra knew the above because she supervised Deleon in 2000. Sierra also knew Deleon was responsive to inquires and possessed the customer service skills necessary for the position.

Sierra stated that she did not select Plaintiff for the Operations Specialist position because Plaintiff had limited experience in the origins and lease verification functions the position involved. Plaintiff also had less experience than Deleon in some of the technology systems used in the origins and lease verification work. In addition, Sierra did not believe Plaintiff possessed the same degree of initiative, interpersonal skills, and willingness to give extra effort to her work as Deleon.

Plaintiff never worked with nor supervised Deleon. Plaintiff stated that she was unaware of Deleon's qualifications. In addition, Plaintiff was never told by anyone from LFG that she did not receive the position because of her age or race. Sierra never mentioned Plaintiff's age or race during the interview. Plaintiff never mentioned to Mahon that she believed she was not hired because of her race and age.

3.      Additional Positions

In April 2003, Plaintiff applied for the Operations Manager position. The Operations Manager was responsible for supervising and managing various departments, including Lessee Affairs and Customer Service. Plaintiff was interviewed for the position. Afterwards, however, the president of LFG, Bill Healy ("Healy"), informed all of the interviewees that he decided to eliminate the position of Operations Manager.

Instead, the new position of Legal Department Supervisor/Operations Supervisor was created to head the Lessee Affairs department. All applicants were advised that they could apply for this new position. As a liaison for corporate and outside legal counsel, the Supervisor would be responsible for monitoring lawsuits, negotiating settlements, communicating with outside counsel about pending lawsuits, and preparing monthly reports. Applications for the position needed some supervisory experience and experience with certain computer programs.

Plaintiff applied for the position in April 2003 by submitting her resume to Mahon. Plaintiff was not interviewed for the position. Defendant notes that Plaintiff never worked in the Lessee Affairs department, did not have any experience in the legal field as she had only worked in the Accounting Department, and did not have any supervisory experience. Plaintiff notes that while she did not have supervisory experience at LFG, she had supervisory experience from previous employment.

Nakia Akins ("Akins") was the successful candidate. Akins is an African-American woman, born in 1975, with no known disabilities. Defendant asserts that Akins was qualified for the position because she had worked in the Lessee Affairs department.

Plaintiff never saw Akins' resume and never had the opportunity to review Akins' work. Plaintiff testified that she was unable to state whether Akins was qualified for the position as she never worked with Akins and was not her supervisor. Plaintiff was never told that she did not receive the position because of her race, age, or disability.

E.      Plaintiff's Complaints

Plaintiff complained to former Human Resources Representative Mahon on two occasions about alleged discrimination, once in 2002 and once in 2004. In 2002, Plaintiff complained that, because of her race, she was advised that the Customer Service Supervisor position to which she had applied would not include a salary increase. Plaintiff withdrew her application upon learning about the salary and thus was not considered for the position. Mahon and the president of LFG, Bill Healy, explained this to Plaintiff in a meeting convened to discuss her complaint.

In 2004, Plaintiff complained because Mahon posted the Vendor Team Leader position only on the Company intranet and not also in the kitchen as previously done with open positions. Plaintiff complained to David Dougan, Director of Human Resources for LFG. Dougan is a Caucasian male born in 1955. Specifically, Plaintiff complained in an e-mail to Dougan that Mahon was playing favorites in failing to post the position in the kitchen and likened this type of behavior to insider trading. Plaintiff did not tell Dougan she felt she was not told about the job because she was black. In response to the e-mail, Dougan called Plaintiff. He advised her that CIT policy is and has been to post open positions on the CIT Employee Intranet, and that the failure to post the position in the kitchen was not comparable to insider trading. At no time during this conversation did Plaintiff mention her belief that she was not told about the job because of her race, age, or disability. Plaintiff contends that the telephone and e-mail conversations between Plaintiff and Dougan constituted a step in the formal grievance process as described in the Employee Handbook.

In 2004, Plaintiff also complained to Human Resources in Livingston, New Jersey that the Chief Financial Officer for LFG did not speak to anyone but the Executive Vice President at the company.

III.    **ANALYSIS**

Defendant advances several reasons why summary judgment in its favor is appropriate.

A.      Time Bar

Plaintiff's Complaint generally alleges that Defendant discriminated against her beginning on or about August 1, 1998, exactly one month after Plaintiff's employment at LFG began.  Plaintiff's Complaint specifically points to Defendant's failure to promote her in January 2004 and its allegedly discriminatory pay raises in March 2004.

Plaintiffs who have filed their complaint with a state agency or, as in the case of Illinois, had their complaint cross-filed with a state agency, have 300 days from the alleged discriminatory action to file a charge with the EEOC.  42 U.S.C. §§ 2000e-5(e) (2005); Mohasco Corp. v. Silver, 447 U.S. 807, 810 (1980).   Being fired, demoted, not promoted, or transferred is "a single, significant event, not a continuing act."  Place v. Abbott Laboratories, 215 F.3d 803, 808 (7th Cir. 2000).  Accord National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) ("Discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire are discrete acts, each of which "constitutes a separate actionable 'unlawful employment practice.'").  A plaintiff can only file a charge that covers discrete acts that occurred within the appropriate time period.  Id.

Plaintiff's allegations that Defendant failed to promote her and to give her a pay raise commensurate with her education and experience are discrete acts.  Plaintiff filed her complaint with the EEOC on March 24, 2004.  Therefore, only incidents that took place within the timely

filing period of 300 days before March 24, 2004 are actionable.  Any discrete discriminatory acts that occurred before May 29, 2003 are not actionable.

Accordingly, to the extent that Plaintiff seeks to litigate incidents that took place between August 1, 1998 and May 29, 2003–namely, her withdrawn application for the Customer Service position in 2002 and her application for the Legal Department Supervisor/Operations Supervisor position in April 2003–those charges are untimely.  This Court will consider only Plaintiff's allegations that Defendant discriminated against her by denying her a promotion to the Operations Specialist position in January 2004 and granting her co-workers higher pay raises in March 2004.

B.      Sex Discrimination and Related Charges

Given that Plaintiff's Complaint asks the Court to direct the Defendant to "[p]ay the plaintiff back wages equal to the salary (highest) paid non-African-American executive males at the company with less education and experience," the Complaint appears to assert Title VII claims for intentional wage discrimination based on sex.  (Compl. ¶ 16(f).)  Plaintiff also checked the boxes in her Complaint indicating claims for failure to stop harassment and retaliation.

 "A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations."  Geldon v. South Milwaukee School District, 414 F.3d 817, 819 (7th Cir. 2005) (internal citations omitted).  Plaintiff did not include allegations of intentional wage discrimination based on sex, harassment, or retaliation in her EEOC charge and does not mention

-15-

these allegations in the narrative part of the Complaint that describes the events underlying her

claim.  Nor are her current allegations of wage discrimination based on sex, harassment, and

retaliation "reasonably related" to the only allegations in her EEOC charge–discrimination on

the basis of race, age, and disability.  "Claims are reasonably related if there is a factual

relationship between them . . . .  At a minimum, this means that the EEOC charge and the

complaint must describe the same conduct and implicate the same individuals." Ezell v. Potter,

400 F.3d 1041, 1046 (7th Cir. 2005) (internal citation omitted).  As the EEOC charge does not

describe sexually discriminatory, harassing, or retaliatory conduct at all, the charge and the

Complaint are not reasonably related as to these claims.  Accord Crawford v. Bank of America,

et al., 986 F. Supp. 506, 508 (N.D. Ill. 1997) ("An allegation of race discrimination is not 'like or

reasonably related to' an allegation of sex discrimination.").

　　　　Because Plaintiff did not include claims for intentional wage discrimination based on sex,

harassment, and retaliation in her EEOC charge or anything related to those claims in her EEOC

charge, she may not proceed on those claims in this Court.


　　　　C.　　　　Disability Discrimination

　　　　Defendant argues that it is entitled to summary judgment on Plaintiff's disability claims

because Plaintiff cannot establish a prima facie case of failure to accommodate on the basis of

disability.  Nor, Defendant argues, can Plaintiff establish that LFG's reason for not promoting

her is pretextual.

　　　　To establish a claim for failure to accommodate a disability, a plaintiff must show that:

(1) she is a qualified individual with a disability; (2) the employer was aware of her disability;

and (3) the employer failed to reasonably accommodate the disability.  Equal Employment

Opportunity Commission v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005).  A person

is a "qualified individual with a disability" under the ADA if she has a physical or mental

impairment which substantially limits one or more of the major life activities, if she has a record

of such an impairment, or if she is regarded as having such an impairment.  42 U.S.C. § 12102(2)

(2005).

     Although asthma qualifies as a physical impairment, Plaintiff cannot establish that her

asthma substantially limits one or more major life activity.  A person  whose impairment is

corrected by medication or other measures does not have an impairment that substantially limits

a major life activity for the purposes of the ADA.  See Sutton v. United Air Lines, Inc., 527 U.S.

471, 482-489 (1999) (holding that "the ADA's coverage is restricted to only those whose

impairments are not mitigated by corrective measures").  Plaintiff has stated that her medication

controls her asthma and allows her to perform all of her job functions.

     Plaintiff's asthma does not make her a qualified individual with a disability; nor does her

the hearing loss in her right ear.  Plaintiff did not inform Defendant of the hearing loss.  Since

"[a]n employee has the initial duty to inform the employer of a disability before ADA liability is

triggered for failure to provide accommodations," Plaintiff's claim against LFG for failure to

accommodate her hearing loss cannot survive.  Hunt-Golliday v. Metropolitan Water

Reclamation District of Greater Chicago, 104 F.3d 1004, 1012 (7th Cir. 1997).

     In sum, Defendant is entitled to summary judgment on Plaintiff's disability claims

because Plaintiff cannot establish a prima facie case of "failure to accommodate" disability

-17-

discrimination. Because Plaintiff cannot state a claim, the Court need not determine whether she is able to prove LFG's reason for not promoting her is pretext for disability discrimination.

D.     Failure to Promote and Intentional Wage Discrimination

What remains are Plaintiff's allegations that Defendant failed to promote her and intentionally paid her less based on her race and age. Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case for either of these allegations.

1.     Failure to Promote

Plaintiff's Complaint and Memorandum in Opposition to Defendant's Motion for Summary Judgment presents no direct evidence of discrimination and no circumstantial evidence allowing the jury to infer intentional discrimination, as required by the direct method of proving discrimination on the basis of race or age. See Rogers v. City of Chicago, 320 F.3d 748, 753-754 (7th Cir. 2003). Therefore, Plaintiff must establish a prima facie case of failure-to-promote discrimination via the indirect burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). **Plaintiff must do so by demonstrating that (1) she belongs to a protected group; (2) she applied for and was qualified for the positions sought; (3) Defendant rejected her for the positions; and (4) Defendant granted the promotions to persons who were not in the protected groups and who were not better qualified than Plaintiff. See id. at 802; Grayson v. City of Chicago, 317 F.3d 745, 748 (7th Cir. 2003). If Plaintiff establishes her prima facie case, the Court must presume that she was discriminated against, and Defendant must articulate a**

-18-

legitimate, nondiscriminatory reason for its employment action.  Id.  Once Defendant has met

this production burden, Plaintiff must establish that the reason offered by Defendant is merely a

pretext for discrimination.  Id.

Plaintiff's failure-to-promote claim cannot survive summary judgment because **she**

cannot satisfy the fourth prong of the McDonnell Douglas framework.  Plaintiff has not provided

any evidence that the persons whom Defendant promoted to Operations Specialist in January

2004 and Vendor Account Assistant in September 2003 were similarly or less qualified than

Plaintiff.  Plaintiff's Memorandum in Opposition does not provide any information about the

qualifications of Lissette Ortega and Glenda Deleon.  **Indeed, her Memorandum in Opposition**

**contains no argument.  It merely states that "Plaintiff substantially agrees with the Lease Finance**

**Group summary of facts" and lists seven of Defendant's facts with which Plaintiff disagrees,**

**none of which address the qualifications of Ortega and Deleon.**[2]  (Pl.'s Mem. in Opp. to Def's

Mot. for Summ. J. at 1.)

**Plaintiff Kennedy is similar to the plaintiff in** Greer v. Board of Education of the City of

Chicago, **267 F.3d 723, 727 (7th Cir. 2001), who proposed undisputed facts of his own, but**

**merely circled the defendant's facts with which he disagreed** without stating the reason why and

failed to cite any evidence in support of his pleadings.  Greer failed to comply with the Local

Rule 56.1, as has Plaintiff.  See supra note1.  The Seventh Circuit ruled that, despite Greer's pro

---

[2]  Plaintiff states, among other things, in her disputed facts that (1) she had experience
supervising and offering customer service before being employed by LFG and (2) Defendant did
not state in its job descriptions that only prior work experience from LFG was considered for
promotions.  Plaintiff also challenges Defendant's contention that Richardson deserved a higher
performance rating and percentage pay increase because he handled more of the additional work
in the Department; Plaintiff's disputed facts state that this tax filing work was rotated weekly
between the Staff Accountants, not handled by Richardson alone.

se status, "[e]mployment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." Greer, 267 F.3d at 727.

Indeed, nothing in the pleadings or briefs Plaintiff has submitted to this Court creates evidence of a factual dispute about Defendant's promotion decisions. Nor Plaintiff does point to any **affidavits, depositions, answers to interrogatories, or admissions that would create an issue of material fact about Ortega and Deleon's qualifications.** The materials Plaintiff submits with her Memorandum in Opposition are unhelpful. Plaintiff provides the LFG telephone directory; her resume; the relevant job postings; an affidavit from a former employer swearing as to Plaintiff's supervisory experience and fine qualities as an employee; her disability statements; and an email to Szabo containing complaints about Parks and confirming that some work in the department was rotated. None of these documents help Plaintiff to establish that she was equally or better qualified than the successful candidates.

In sum, as shown by Plaintiff's deposition testimony, Plaintiff simply believes she was not promoted because of her race and age. More than once, the Seventh Circuit has "upheld the entry of summary judgment against a Title VII plaintiff who has presented only his own uncorroborated, conclusory statements that similarly situated co-workers were treated differently." Oest v. Illinois Dept. of Corrections, 240 F.3d 605. 714 (7th Cir. 2001). Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure-to-promote claim.[3]

---

[3] Because Plaintiff has not established a prima facie case, the Court need not consider whether Plaintiff has shown that Defendant's reasons for not promoting Plaintiff are pretext. The Court notes, however, that Plaintiff's Memorandum in Opposition also fails to address the

2.    Intentional Wage Discrimination

Since Plaintiff has alleged that Defendant awarded her co-workers higher pay raises than it awarded her in March 2004, she must also state a prima facie case of disparate compensation.[4] Plaintiff must show that: (1) she is a member of a protected group; (2) she was fulfilling her employer's legitimate performance expectations; and (3) she suffered an adverse employment action in that she was paid a lower salary than a "similarly situated" nonprotected class member. Dandy v. United Parcel Service, Inc., 388 F.3d 263, 274 (7th Cir. 2004).  "To be 'similarly situated,' [a plaintiff] must show that her performance, qualifications, and conduct were comparable to the nonprotected class member in 'all material respects.'"  Id. (internal citations omitted).  The McDonnell Douglas framework still applies: Once a plaintiff has made out a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for its pay decisions, and the plaintiff still bears the burden of showing the defendant's proffered reasons for the disparity are merely a pretext for discrimination.  Ghosh v. Indiana Dept. of Environmental Management, 192 F.3d 1087, 1094 (7th Cir. 1999).  A plaintiff does not reach the pretext stage unless she first establishes a prima facie case of discrimination.  Also, because Title VII requires intent to discriminate, a plaintiff "must establish that the pay disparity resulted from an actual desire"on the part of the defendant to pay the plaintiff less.  Id.

---

issue of pretext.

[4] The Court will treat Plaintiff's intentional wage discrimination claim as one based on age alone.  Plaintiff complains that she was paid less than her co-workers, Parks and Richardson, both of whom are the same race as Plaintiff.  Therefore, the Court will assume that Plaintiff's complaint is that she was paid less than Parks and Richardson because they are younger, not because she is African-American.

Defendant is entitled to summary judgment on Plaintiff's intentional wage discrimination claim. Plaintiff has not provided any facts to suggest that she was paid a lower salary than a "similarly situated" nonprotected class member. Since Plaintiff has not controverted Defendant's facts on this issue, Defendant's facts are deemed admitted. Defendant contends that it based its pay increases for 2004 on the performance ratings for 2003. These ratings show that Plaintiff was not similarly situated to her co-workers Richardson and Parks, since Plaintiff received the lowest rating of the three Staff Accountants. In addition, despite her low rating, Plaintiff received the same 2% merit increase as Parks, who had the next highest performance rating. Aside from registering disagreement with Defendant's material fact that Richardson, the most highly rated Staff Accountant, alone shouldered much of the additional work in the department, Plaintiff has made no statement and produced no evidence that would suggest her performance, qualifications, and conduct were comparable to that of her younger co-workers.

Even assuming Plaintiff was similarly situated to Richardson and Parks, Plaintiff has not met her burden of showing Defendant's proffered reasons for the alleged pay disparity (the better performance records of and greater responsibilities handled by Parks and Richardson, as reflected in the performance ratings) are merely a pretext for discrimination. Plaintiff's pleadings and Memorandum in Opposition do not even mention Defendant's reasons for providing Richardson a 4% pay increase or making Parks' salary $325 more than Plaintiff's salary. The materials she submits with her Memorandum in Opposition, described above, are unhelpful. Finally, Plaintiff has provided nothing to establish that the pay disparity resulted from an "actual desire" on Defendant's part to pay Plaintiff less because of her race and age. Ghosh, 192 F.3d at 1094.     Without additional facts identified by Plaintiff in affidavits, depositions,

answers to interrogatories or admissions, there is simply not enough **evidence for a reasonable jury to return a verdict for Plaintiff. Likewise, without actual argument by Plaintiff, there are no reasonable inferences to draw in her favor.** Consequently, Defendant is entitled to summary judgment on Plaintiff's intentional wage discrimination claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. This case is closed.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **December 13, 2005**